1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

10

11

12

13

14

15

UNITED STATES OF AMERICA,     )
                             )
    Plaintiff,               )
                             )
   v.                        )
                             )
RATOMIR VUKASINOVIC,       )
                             )
    Defendant.           )
_____)

No.: CR-05-350 WHA (EDL)


**ORDER RECONSIDERING ORDER FOR PRETRIAL RELEASE AND DENYING REQUEST FOR PRETRIAL RELEASE**

16

17

18

19

20

21

22

23

24

25

26

27

28

       This matter came before this Court on August 9 and 22, 2005 for evidentiary hearings on

the government's motion to reopen the defendant's detention hearing for reconsideration of the

Court's June 7, 2005 decision granting the defendant's pretrial release.  See 18 U.S.C. § 3142(f)

("The [detention] hearing may be reopened before or after a determination by the judicial officer,

at any time before trial if the judicial officer finds that information exists that was not known to

the movant at the time of the hearing and that has a material bearing on the issue whether there

are conditions of release that will reasonably assure the appearance of such person as required

and the safety of any other person and the community.").  The government argued that new

evidence, including the declaration of Alex Vukasinovic, one of the defendant's sons by his

second wife, a statement that the defendant made to a law enforcement agent on June 2, 2005

regarding how long he had been in the United States and a telephonic threat in July 2005 by the

defendant's bondsperson and friend, Selimir Lazic, against Edith Vukasinovic, the defendant's

estranged third wife, warranted reconsideration of the Court's pretrial release order.  The Court

1

agreed to reopen the defendant's detention hearing.

At the hearing, the Court heard testimony from United States Customs and Immigration Special Agent Matthew Van Dyke; Alex Vukasinovic; Carmen Hennessy, the defendant's second wife; Edith Vukasinovic; Alicia Garcia, the defendant's current girlfriend and a surety; and Selimir Lazic, the other surety. The defendant, present and in custody at the hearings, was represented by Assistant Federal Public Defender Dan Blank. The United States was represented by Assistant United States Attorney Dennis Nerney. The Court permitted further briefing regarding the defendant's criminal history, which was filed on August 25, 2005 and September 1, 2005. Because this matter was appropriate for decision without further oral argument, the September 13, 2005 hearing was vacated. Having considered the evidence received during the August 9 and 22, 2005 evidentiary hearings, and the files and records in this matter, the Court finds that, based on the new evidence, the government has met its burden of showing by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant and by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if he is released.

The defendant has an extensive criminal history, which was partially contained in the May 25, 2005 pretrial services report that the Court previously reviewed before releasing the defendant in June 2005, but which has been greatly illuminated by the government's recent submission of the July 23, 2002 San Mateo County probation report and recommendation. See Summary of Def. Vukasinovic's Criminal Record Ex. B. The San Mateo County report and recommendation contains much more detailed information about the defendant's criminal conduct. When viewed in light of this new evidence, the defendant's criminal history, particularly his recidivism and apparent inability to modify his behavior, demonstrates his danger to the community. In particular, the defendant's history as set forth in more detail in the probation report, that the Court has now seen, than provided on the pretrial services report, which the Court had when it made the original decision to release, reveals repeated unrepentant drunk driving. The Court is especially concerned by this pattern because the Court credits Agent Van Dyke's testimony that he arrested the defendant after the defendant left a bar where the defendant was seen drinking and entered the driver's side of a car with keys in his hand in violation of the

conditions of his state probation that he not drink or drive. See Aug. 9, 2005 Tr. at 11:7-24.

Moreover, the defendant's son, Alex Vukasinovic, submitted a declaration and credibly testified at the evidentiary hearing that not only did he fear for the safety of his mother, who was previously abused by the defendant, his brother, and Edith Vukasinovic if the defendant is released, but also that he had not heard from, spoken to or seen his father in at least thirteen years. See Declaration of Alex Vukasinovic ¶¶ 1-2, 4; Aug. 9, 2005 Tr. at 24:3-4. This testimony confirms that the defendant lied to this Court's pretrial services, as well as to the San Mateo County probation officer, when the defendant reported to them that he maintains monthly contact with both of his children and is on good terms with his sons. This information about the defendant's lack of truthfulness to Pretrial Services seriously concerns the Court.

United States Customs and Immigration Agent Matthew Van Dyke testified that on June 2, 2005, the defendant told him that the defendant had only been in the United States for six months. See Aug. 9, 2005 Tr. at 12:7-9. However, Edith Vukasinovic told Agent Van Dyke that the defendant had been in the United States since October 2003. See id. at 12:13-18. Ms. Vukasinovic similarly testified that she had seen him in November 2003. See id. at 62:14-18. The Court does not rely on this testimony because although the Court believes that Ms. Vukasinovic told Agent Van Dyke, she often seemed confused and to have limited proficiency in English.

The government has not shown that Selimir Lazic threatened Edith Vukasinovic. While Ms. Vukasinovic's testimony was less than clear, the records from her telephone and Mr. Lazic's cellphone that the Court reviewed in camera revealed that Ms. Vukasinovic did not call Mr. Lazic in response to a call from him, but that she called him first.[1] Mr. Lazic admitted at the hearing that he essentially told Ms. Vukasinovic that she should go to jail for a very long time, in that he believed she was the one who caused his friend's legal troubles, but his statement was not a threat.

---

[1]    The Court, however, is troubled that Agent Van Dyke was not being as forthcoming as he could have been on this issue and clarified only on rebuttal that the alleged threat occurred during a call that Ms. Vukasinovic made to Mr. Lazic. See Aug. 9, 2005 Tr. at 85:23-24. The Court nonetheless credits his testimony regarding the arrest as noted above.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

While the Court sympathizes with the desire of the defendant's current girlfriend and surety, Alicia Garcia, to have him released, the Court is also troubled with the revelation at the hearing that she has misled and, the Court believes, would continue to mislead Pretrial Services and the Court to cover for him. She confirmed the defendant's lie to Pretrial Services that he had regular contact with his sons. See Aug. 9, 2005 Tr. at 106:24-107:2. When asked by the Court to explain her basis, she acknowledged that she had not personally known of any such conduct (despite living with the defendant), but claimed that she believed that she learned of the regular contact from one of the sons when she telephoned him upon the defendant's arrest. See id. at 106:24-107:8. Based on the son's emphatic and credible testimony (in the presence of his brother who attended the hearing) that his father has not seen or talked to the sons for years, the Court does not believe her explanation. Finally, Ms. Garcia told pretrial services that the defendant drinks occasionally (although the Court does not believe that his drinking is so limited), yet she testified at the hearing that he does not drink at all (perhaps because she has recently learned of his probation restrictions forbidding any drinking). See id. at 103:11-17. Also, in terms of whether she knows the defendant sufficiently well and whether he is sufficiently candid with her for her to serve as an appropriate surety, she testified at the evidentiary hearing that she was not aware of the full extent of the defendant's criminal history. See Aug. 9, 2005 Tr. at 104:14-105:20. The Court no longer believes that Ms. Garcia is an appropriate surety.

Moreover, the Court learned for the first time at the evidentiary hearing that defendant's other surety, Mr. Selimir Lazic, had been arrested and convicted on more than one occasion for driving under the influence, the same type of crime for which the defendant either was convicted or entered into a plea agreement on multiple occasions, the last time approximately eight months after his prior conviction and while he was on probation. See Summary of Defendant Vukasinovic's Criminal Record Ex. A, B. Mr. Lazic, like Ms. Garcia, told pretrial services that the defendant drinks occasionally, but then at the hearing testified that the defendant does not drink at all. Also, although the Court does not believe Mr. Lazic threatened Edith Vukasinovic, he admitted to telling her that she should go to jail for a long time for what she did to his friend, the defendant. Thus, Mr. Lazic blamed the victim for the defendant's troubles (even though a

4

jury convicted the defendant of abusing her), not recognizing the defendant's responsibility for his own situation.  Further, Mr. Lazic testified at the evidentiary hearing that he was not aware of the full extent of the defendant's criminal history.  Therefore, the Court no longer believes that Mr. Lazic is an appropriate surety.

The Court considered the option of releasing the defendant to a halfway house, but upon inquiry to Pretrial Services has been informed that he is not a suitable candidate for a halfway house based on his numerous convictions for violent offenses.  See Sept. 13, 2005 Pretrial Services memo.  There are no conditions that adequately assure that he will not pose a danger to the community.  The defendant has felony convictions for driving under the influence that make him a danger and he has not taken serious steps to correct his recidivist conduct.  Moreover, several family members testified that they feared for their safety if the defendant were released.  Also, the defendant poses a risk of flight should Immigration and Customs Enforcement determine to release him and then not accept his argument that his deportation violated due process.  The Court is concerned that the defendant would disappear with no forwarding address, although not necessarily leave the country.

The Court is troubled that the government obtained the defendant's appearance in court through a Writ of Habeas Corpus ad Prosequendum, rather than through a motion, when the defendant had previously been released on bond.  However, the Court has concluded based on the evidence that it should reconsider its decision granting the defendant's release.

IT IS HEREBY ORDERED that:

1.    The defendant be, and hereby is, committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentence or being held in custody pending appeal;

2.    The defendant be afforded reasonable opportunity for private consultation with his counsel; and

//

//

//

//

5

3.    On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined shall deliver the defendant to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

**IT IS SO ORDERED.**

DATED: September 16, 2005

_Elizabeth D. Laporte_
_____
ELIZABETH D. LAPORTE
United States Magistrate Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28