IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>RATOMIR VUKASINOVIC,<br><br>    Defendant.<br>_____/ | No. CR 05-00350 WHA<br><br>**ORDER DENYING MOTION TO DISMISS** |

       In this prosecution for illegal reentry, defendant Ratomir Vukasinovic moves for dismissal of the indictment on the ground that the underlying removal order was invalid. For the reasons below, Mr. Vukasinovic has not demonstrated that the removal order or the proceedings that led to it were improper. His motion is therefore **DENIED**.

**STATEMENT**

       Mr. Vukasinovic emigrated to the United States in 1973 from Yugoslavia and became a lawful permanent resident here. He then began to get in trouble for violence, drunken driving and theft. He was convicted of theft on three occasions: in 1973, for stealing an automotive tool; in 1979, after a jury trial, for stealing $23 worth of razor blades; and in 1980, for attempting to steal $10.57 worth of toiletry items. The 1980 conviction later was expunged.

       Mr. Vukasinovic was convicted of violent crime on several occasions: assault in 1977, for attacking a man with whom he had a business dispute; domestic violence in 1986, for assaulting his wife; assault in 1989, by jury trial, for allegedly punching his ex-wife in the mouth and violently resisting arrest; assault a second time in 1989, for striking and biting a

security guard escorting him from a bar; and assault in 1995, by court trial, for assaulting his wife. In 1977, he was convicted of disturbing the peace for a fight with his first wife. In connection with the 1995 assault conviction, he was convicted of attempting to dissuade a witness.

Mr. Vukasinovic also repeatedly violated the rules of the road. He was convicted of driving while his privilege was suspended on four occasions: in 1987, 1990 and 1991 (twice). He was convicted of driving under the influence of alcohol six times: in 1988, 1989, 1990, 1992, 2001 and 2002. In 1995, he was held for violating probation on the 1992 DUI charge.

In October 1990, he was convicted of perjury for lying on applications for driver licenses (Decl. Van Dyke ¶¶ 14–26; Prob. Officer's Report and Recommendation to Super. Ct. in San Mateo County 5–10 (Aug. 25, 2005)).

He has twice faced deportation hearings. In December 1990, the Immigration and Naturalization Service sought to deport Mr. Vukasinovic due to his convictions for the 1979 petty theft conviction and the 1990 perjury conviction.[1] He instead was granted a discretionary waiver of deportation pursuant to Section 212(c) of the Immigration and Nationality Act. *See* 8 U.S.C. 1182(c) (repealed 1996).

In October 2001, the INS again sought to deport Mr. Vukasinovic, this time due to the 1979 petty-theft conviction and the 1995 domestic-violence conviction.

On November 12, 2002, a hearing was held in Mr. Vukasinovic's removal proceedings. Counsel for Mr. Vukasinovic told Judge Paul D. Grussendorf of the Immigration Court that he intended to seek a discretionary waiver of deportation under Section 212(c). Judge Grussendorf said, "Well counsel, I'll let you put your research into writing. If he's been granted a 212(c) already, then that's the standard, that he can't reapply for it. But if you want to advance some kind of unique theory . . . I'll give you an opportunity to do that." No such arguments were made because, later in the hearing, Mr. Vukasinovic gave up the fight and requested an order of removal. Judge Grussendorf obliged him.

---

[1] The Immigration and Naturalization Service's enforcement and investigative functions were later transferred to the Department of Homeland Security and assumed by one of its sub-units, the Bureau of Immigration and Customs Enforcement.

Mr. Vukasinovic sent letters to Judge Grussendorf, asking him to reconsider the decision. Judge Grussendorf treated these as a motion to reopen and denied it. Mr. Vukasinovic appealed that denial to the Board of Immigration Appeals. Before his appeal was heard, Mr. Vukasinovic was deported to Serbia and Montenegro.

In May 2005, immigration and customs agents arrested Mr. Vukasinovic in San Mateo. He was indicted in June on charges of illegally reentering the United States after deportation.

**ANALYSIS**

A person charged with illegal reentry under 8 U.S.C. 1326 may defend on the grounds that the underlying deportation was unjust. To challenge the underlying deportation order successfully, the defendant must demonstrate that (1) he exhausted all avenues of administrative relief from the order; (2) the deportation proceedings improperly deprived him of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. 8 U.S.C. 1326(d). An order is "fundamentally unfair" only if the defendant's due-process rights were violated in the deportation proceedings and he suffered prejudice as a result. *United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998).

**1.    Waivers of Deportation**

Until 1996, discretionary waivers of deportation pursuant to Section 212(c) of the Immigration and Nationality Act were commonly granted. *See INS v. St. Cyr*, 533 U.S. 289, 296 & n.5 (2001).[2] The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 repealed Section 212(c) and made it harder to get a waiver. Under the new law, no alien previously convicted of an aggravated felony can receive a waiver of deportation. 8 U.S.C. 1229b(a)(3). Mr. Vukasinovic's convictions make him ineligible for a waiver under current law.

Congress did not make the Act retroactive to all aliens. People who pleaded guilty or *nolo contendere* to crimes before 1996 may have made those plea agreements, giving up their

---

[2] Between 1989 and 1996, the attorney general or his designates granted 51.5 of the waiver applications in which a final decision was reached. *St. Cyr*, 533 U.S. 296 & n.5 (citing Julie K. Rannik, *The Anti-Terrorism and Effective Death Penalty Act of 1996: A Death Sentence for the 212(c) Waiver*, 28 U. Miami Inter-Am. L. Rev. 123, 150, n. 80 (1996).

3

right to a jury trial, in reliance on the availability of the deportation waiver. Had they known that the waiver possibility would be taken away, they might have decided to fight the charges further. Applying the more stringent new law retroactively to such people would be unfair. The Section 212(c) deportation waiver provision, therefore, remains categorically available to any defendant who pleaded guilty or *nolo contendere* at a time when they would have been eligible to seek such a waiver. *St. Cyr*, 533 U.S. at 323, 327 (2001).

This reliance argument, however, is significantly weaker when the defendant did not enter into a plea agreement but instead fought the charges at trial. For that reason, the more stringent waiver rules *do* apply retroactively to defendants who were convicted at trial. *Armendariz-Montoya v. Sonchik*, 291 F.3d 1116, 1121–22 (9th Cir. 2002).

In *Almendariz-Montoya*, a jury convicted a foreign citizen of possession of cocaine with intent to distribute it. *Id.* at 1118. He lost his appeal. Appellate Reply Brief at 8, *Armendariz-Montoya*, 291 F.3d 1116 (9th Cir. 2002) (No. 01-16029), 2001 WL 34094677. The Ninth Circuit held:

> Unlike aliens who pleaded guilty, aliens who elected a jury trial cannot plausibly claim that they would have acted any differently if they had known [that the waiver possibility would be eliminated]. As the Seventh Circuit explained,
>
>> It would border on the absurd to argue that these aliens might have decided not to commit drug crimes, or might have resisted conviction more vigorously, had they known that if they were not only imprisoned but also, when their prison term ended, ordered deported, they could not ask for a discretionary waiver of deportation.
>
> Armendariz pleaded not guilty and elected a jury trial. Therefore, application of [the repeal] does not result in any retroactive effect. Accordingly . . . Armendariz is barred from seeking § 212(c) relief.

*Armendariz-Montoya*, 291 F.3d at 1121–22 (citation omitted).

The Ninth Circuit repeatedly has emphasized the importance of the distinction between guilty verdicts after trial and guilty or *nolo contendere* pleas in this context. *E.g.*, *United States v. Hovsepian*, 359 F.3d 1144, 1157 & n.6 (9th Cir. 2004) ("Hovsepian is not similarly situated to the petitioner in *St. Cyr* because he did not plead guilty but, instead, was convicted after a trial. Thus, Hovsepian did not waive any constitutional rights in reliance on the possibility of

4

favorable immigration consequences, nor did he enter into a quid pro quo relationship with the INS that was unsettled by . . . retroactive application."); *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 602 (9th Cir. 2002) ("The factors that militated in favor of St. Cyr are not present in Jimenez-Angeles' case. When St. Cyr entered into his plea bargain, he gave up valuable legal rights, including his right to trial by jury. By contrast, when Jimenez-Angeles revealed herself to the INS, she gave up only her ability to continue living illegally and undetected in the United States. . . . [A]lthough the government did gain something of value when Jimenez-Angeles came forward . . . this is [not] the sort of exchange contemplated . . . in *St. Cyr.* A plea bargain is a formal exchange . . . [i]n Jimenez-Angeles' case, there was no such exchange.").

Some appellants seeking to avoid application of immigration laws have argued that the *quid pro quo* nature of a plea bargain is not determinative. The Ninth Circuit rejected that argument in *Lopez-Urenda v. Ashcroft*, 345 F.3d 788 (9th Cir. 2003), among other cases. In *Lopez-Urenda*, an alien applied for asylum hoping that, if it were denied, he could seek a waiver of removal. After his asylum application, however, the Illegal Immigration Reform and Immigrant Responsibility Act went into effect and eliminated the waiver for which he might have been eligible. Lopez-Urenda argued that application of the statute to him was improper, despite the lack of any plea bargain. The Ninth Circuit held:

> The key difference between his case and *St. Cyr* . . . is that when applying for asylum Lopez-Urenda did not waive [his] right [to have the INS prove deportability]. . .. Even if we were to conclude that Lopez-Urenda did waive his evidentiary right . . . [t]he concession of alienage in this case is not comparable to the numerous constitutional rights the petitioner in *St. Cyr* relinquished, including the right to trial by jury and all of its attendant safeguards. Similarly, any benefit the government may have gained in this case . . . [is] not so weighty as to create a settled expectation that suspension of deportation would remain available in exchange."

345 F.3d at 789–90, 795–96.

**2.  No Waiver Was Available to Mr. Vukasinovic**

To demonstrate the unfairness of his 2002 deportation order, Mr. Vukasinovic relies heavily on the fact that the immigration judge stated that Section 212(c) relief was not available to him because he received a previous waiver. He argues that his prior receipt of a waiver did not bar him from getting Section 212(c) relief again. The government does not challenge that contention. More importantly, Mr. Vukasinovic claims that the immigration judge was

5

incorrect in stating that Section 212(c) relief was not available in his case. He argues that, under *St. Cyr*, it actually was available.

Mr. Vukasinovic claims that the judge's alleged misstatement allows him successfully to challenge the deportation order that underlies the indictment. First, he argues that, because he believed the judge's statement, he believed that he had no chance of a waiver and therefore did not bother to exhaust his administrative remedies. Second, he argues that the judge's statement effectively denied him judicial review of the removal order because it led him to believe such process would be futile. Third, he argues that the judge's statement made the proceedings so defective that they deprived him of due process. Finally, he contends he had a plausible chance of receiving Section 212(c) relief and therefore was prejudiced by the judge's alleged misstatement.

If a discretionary waiver was not available to Mr. Vukasinovic, the judge's statement to that effect was true. All four of Mr. Vukasinovic's arguments then would fail. He would be unable to prove that the judge's statement misled him to not exhaust his administrative remedies and to not seek judicial review, nor could he prove that there was a procedural defect that deprived him of due process. Additionally, if no waiver was available, his failure to seek it did not cause him any prejudice or harm.

The judge's statement was true. Mr. Vukasinovic, therefore fails to satisfy any of the four elements of Section 1326(d). Discretionary relief was not available to Mr. Vukasinovic because his pre-1996 convictions were after trial, not upon plea agreements. *See Armendariz-Montoya*, 291 F.3d at 1121–22. Mr. Vukasinovic makes two arguments in order to avoid the result dictated by *Armendariz-Montoya*.

He claims that, unlike the defendant in *Armendariz-Montoya*, he actually relied upon the availability of Section 212(c) relief. He claims one such reliance was his decision not to appeal his 1995 conviction.

There is no evidence in the record, however, to suggest that Mr. Vukasinovic relied upon the availability of Section 212(c) in deciding how to confront the prior charges against him. Mr. Vukasinovic testified at the hearing on the instant motion that, if he had known that

1  212(c) relief would not be available, he would have appealed his conviction. Such testimony is
2  hindsight, not proof of reliance. There is no evidence that the availability of Section 212(c)
3  relief ever factored into his decision to not appeal.[3]

4  Even if there were evidence of reliance, it would not help Mr. Vukasinovic. Although
5  *Almendariz-Montoya* does not explicitly foreclose Mr. Vukasinovic's argument that a decision
6  to not appeal is sufficient reliance, two factors defeat this argument.

7  First, the *Almendariz-Montoya* court had the same argument before it, in the parties'
8  briefs. Instead of adopting it, the court instead seemed to foreclose it: "aliens who elected a
9  jury trial cannot plausibly claim that they would have acted any differently." *Ibid.* Second, the
10 decision to give up the right to a jury trial is a much graver decision than the decision not to
11 appeal a judgment of conviction. Before trial, the accused is presumed innocent and the burden
12 is on the government to prove guilt beyond a reasonable doubt. After judgment, however, the
13 burden shifts to the convicted defendant to prove error. Giving up the opportunity to appeal
14 after being proven guilty is much less prejudicial, if at all. The reliance interest from pleading
15 guilty or *nolo contendere* is therefore more significant than is the reliance interest from deciding
16 not to appeal. *St. Cyr* protected the reliance interest in pleading guilty or *nolo contendere* partly
17 because of the significance of the rights the defendant gave up. 533 U.S. at 322, 325. Mr.
18 Vukasinovic made no similar sacrifice.

19 Mr. Vukasinovic's seeks cover in *Restrepo v. McElroy*, 369 F.3d 627 (2d Cir. 2004). In
20 that case, the Second Circuit held that the petitioner could challenge a ruling that he was
21 ineligible for Section 212(c) relief on the grounds that, if he had known the waiver law would
22 change, he would have applied for Section 212(c) relief even before removal proceedings
23 began. The court, however, made it clear that its holding did not apply to those who were found
24 guilty after a jury trial: "[A]liens who elected a jury trial cannot plausibly claim that they

---

[3] Mr. Vukasinovic, a convicted perjurer, submitted an unsigned declaration to the Court. Because it was not signed, it is not admitted into evidence. Even if it were, it would not prove that he relied on the availability of Section 212(c) in confronting the prior charges. He stated in the declaration that "I had thought that I could maybe get section 212(c) relief again, like I did before, but when the judge said there was no relief available I figured there were no options." This only shows that, at the time of the deportation hearing, he believed he might get section 212(c) relief. It does nothing to show that he relied upon this when the earlier criminal charges were pending.

7

would have acted any differently if they had known about the [harsher waiver rules]." 369 F.3d at 637 (internal citation omitted). In doing so, the *Restrepo* court reiterated support for an earlier holding that was substantially similar to that of *Almendariz-Montoya*. *See Rankine v. Reno*, 319 F.3d 93 (2d Cir. 2003).

In the instant case, Mr. Vukasinovic does not make the same claim as did the petitioner in *Restrepo*. He does not claim that he procrastinated in applying for Section 212(c) relief in order to rehabilitate himself first. Instead, he is like the defendants in *Rankine* and *Almendariz-Montoya*. Even in the Second Circuit, therefore, Mr. Vukasinovic could not make out a valid claim that he was entitled to Section 212(c) relief.

Mr. Vukasinovic cannot demonstrate that the immigration judge's statement that he was ineligible for Section 212(c) relief was false. He therefore has not satisfied, on that basis, any of the elements required to challenge the underlying removal order. Even if he were able to prove some other procedural irregularity, he still could not carry his burden of proving actual prejudice because in no event could he have won Section 212(c) relief.

**3.     Mr. Vukasinovic Voluntarily Gave Up His Administrative Remedies**

Even if Section 212(c) relief were available to Mr. Vukasinovic, he would have no basis for challenging his previous deportation order because he voluntarily gave up his right to seek such a waiver.

On November 12, 2002, Judge Grussendorf told Mr. Vukasinovic's counsel that if Mr. Vukasinovic had "been granted a 212(c) already . . . he can't reapply for it." In the same breath, however, Judged Grussendorf gave him the opportunity to challenge that conclusion: "[C]ounsel, I'll let you put your research into writing. . . .[I]f you want to advance some kind of unique theory . . . I'll give you an opportunity to do that."

8

1   That was Mr. Vukasinovic's invitation to seek 212(c) relief.  He declined.  Instead, he decided not to contest removal.  In doing so, he failed to pursue his administrative remedies, thus failing to meet the first requirement of 8 U.S.C. 1326(d).[4]

**CONCLUSION**

Mr. Vukasinovic has failed to satisfy the elements of section 1326(d) for challenging the removal order underlying the current indictment.  His motion to dismiss it therefore is **DENIED**.

**IT IS SO ORDERED.**

Dated:  October 28, 2005

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[4] He later sought to reopen the proceedings on the grounds that his judgment had been clouded by the effects of medication he was taking at the time, and out of his frustration with being in custody and with unfavorable testimony given by his wife in his bond hearing.  His motion to reopen was denied after the INS employee charged with supervising Mr. Vukasinovic's detention submitted a declaration disputing the allegation that Mr. Vukasinovic was on any drug that could affect his judgment.  The detention supervisor stated that the only drug Mr. Vukasinovic was taking at the time was an anti-itch cream (Van Dyke Decl., Exhs. 3, 6, 7).